BARBARA MARCO, d/b/a Marco Data Service, Plaintiff-Appellee, v. LYNN QUIGLEY DOHERTY, Director of Employment Security of the State of Illinois, *et al.*, Defendants-Appellants.

Fifth District No. 5—94—0628

Opinion filed November 17, 1995.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellants.

Phillip H. Hamilton, of Farrell Law Firm, P.C., of Godfrey, for appellee.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

The defendants, the Department of Employment Security (Department) and the Director of Employment Security (Director), appeal from a Madison County circuit court order reversing a decision of the Director. The circuit court ordered the Department to refund $4,835.14 in unemployment insurance contributions paid by the plaintiff, Barbara Marco, which the Director had refused to refund.

The single issue on appeal is whether section 2200 of the Unemployment Insurance Act (Act) (820 ILCS 405/2200 (West 1994)) authorizes the Director of Employment Security to retroactively increase an employer's contribution amount after having issued a final decision that adjudicated the contribution amount based upon the findings of fact and recommendations of the Director's representative in an administrative hearing.

According to the record, on May 24, 1991, the Director made a determination and assessment against the plaintiff for unpaid unemployment insurance contributions, penalties, and interest in the amount of $7,225.41 for the period between 1986 and 1991. On May 29, 1991, the plaintiff paid $7,225.41 to the Department of Employment Security under protest. The plaintiff then filed a timely objection and petitioned for an administrative hearing pursuant to section 2200 of the Act.

On April 15, 1992, the Director's representative presided over the plaintiff's hearing, and on July 24, 1992, he issued his findings of fact and recommendations. The Director's representative found that prior to 1989 the plaintiff was an employee of American Redemption Services, Inc., and therefore was not an employer required to contribute to the unemployment insurance fund. The Director's representative further found that the plaintiff was an employer required to contribute to the fund for the period between 1989 and 1991. The Director's representative then recommended that the Director modify her determination and assessment to charge the plaintiff $869.69 for unpaid contributions and penalties. The plaintiff filed an untimely objection to the findings and recommendation. Because the objection was untimely, the findings and recommendation stood unchallenged.

On July 9, 1993, the Director adopted her representative's findings of fact and recommendation and issued a "Final Decision" requiring the plaintiff to pay $869.69. Although the plaintiff had a right to seek review of the Director's final decision pursuant to section 2205 of the Act (820 ILCS 405/2205 (West 1994)), she did not appeal to the circuit court.

On July 14, 1993, the plaintiff requested a refund of $6,355.72. This amount represented the difference between her $7,225.41 payment under protest and the Director's final assessment of $869.69. On August 10, 1993, the Director refunded $1,520.58 to the plaintiff. The Director refused to refund the remaining $4,835.14. The Director stated that the reason for her partial denial of the refund was her retroactive adjustment of the plaintiff's contribution rate for 1989 through 1991.

According to the record, when the Director issued her final decision, she computed the amount of the plaintiff's contributions due at the favorable rate of 0.6% of taxable wages. This is apparently the rate applied to experienced employers. According to the Director, the plaintiff was not eligible for the favorable rate because she was not an experienced employer. The Director determined that plaintiff's contributions should have been determined at the higher rate of 3.3% of taxable wages. The Director then relied upon section 2200 of

the Act to recalculate the contribution amount owed by the plaintiff using the higher rate. This amount equaled $4,835.14, the refund amount denied by the Director.

On August 20, 1993, the plaintiff filed an objection to the Director's partial denial of refund, and the Director's representative held a hearing on the matter on January 6, 1994. The Director's representative affirmed the Director's unilateral retroactive contribution rate adjustment, and the plaintiff filed her objections to this finding on January 27, 1994. On March 2, 1994, the Director adopted her representative's findings of fact and recommendations and sustained her partial denial of the plaintiff's refund.

The plaintiff appealed the Director's partial denial of refund to the Madison County circuit court on March 15, 1994, pursuant to section 2205 of the Act. After hearing arguments on the issue, the circuit court held that the Director's July 9, 1993, "Final Decision" was final and binding on all parties pursuant to section 2204 of the Act (840 ILCS 405/2204 (West 1994)), and, therefore, neither the Director nor the Department could retroactively increase the amount of the plaintiff's contribution that was due for the period 1989 through 1991. On August 15, 1994, the circuit court entered an order reversing the Director's decision to partially deny plaintiff's refund request and ordered the Department to pay the plaintiff $4,835.14 plus interest. The defendants appeal.

The defendants argue that section 2200 authorized the Director to determine whether all contributions payable by an employer were included in the final assessment and, if not, to make a determination and assessment of the proper contribution amount due despite any finality of an earlier "final" decision.

The defendants rely on *Winakor v. Annunzio* (1951), 409 Ill. 236, 99 N.E.2d 191, to support their position. In *Winakor*, the Illinois Supreme Court noted, "while the statute [section 18(c)(7)(C) of the Unemployment Compensation Act (Ill. Rev. Stat. 1947, ch. 48, par. 234(c)(7)(C) (now 820 ILCS 405/1509 (West 1994)))] specifically makes a rate determination binding upon the employer, it does not make it binding upon the Director, either expressly or by implication." (*Winakor*, 409 Ill. at 249, 99 N.E.2d at 197.) We find that *Winakor* is inapplicable because it does not address the binding effect of the Director's "Final Decision" issued following an adjudicatory administrative hearing. *Winakor* involved the assignment of a contribution rate by the Director. This rate was not determined at an administrative hearing. Later, the Director changed the assigned rate, and the employer appealed through the administrative process and ultimately through the courts. Because the initial rate assigned was not the

result of an adjudicatory process, the holding in *Winakor* fails to address the issue before us.

The defendants also argue that the Director cannot be estopped from increasing the plaintiff's amount of contributions that are due for the years 1989 through 1991 because the State cannot generally be estopped from collecting taxes that are legally due (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437) and estoppel may be invoked against the State in its collection of public revenue only in extraordinary circumstances. *People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7.

The plaintiff asserts that the Director's July 9, 1993, "Final Decision" was final and binding pursuant to section 2204 of the Act. That section provides:

"Any decision of the Director made upon the conclusion of any hearing pursuant to the provisions of Sections 2200 or 2201 shall be final and conclusive, unless reversed as provided in Section 2205." (820 ILCS 405/2204 (West 1994).)

The plaintiff argues that since she did not petition for a review of the Director's July 9, 1993, "Final Decision," the Director's decision was final and conclusive upon both the plaintiff and the Department of Employment Security. We agree.

In 1966, the United States Supreme Court held that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." (*United States v. Utah Construction & Mining Co.* (1966), 384 U.S. 394, 422, 16 L. Ed. 2d 642, 661, 86 S. Ct. 1545, 1560 (superseded by statute).) *Utah Construction*, which was subsequently approved in *Kremer v. Chemical Construction Corp.* (1982), 456 U.S. 461, 484-85 n.26, 72 L. Ed. 2d 262, 282 n.26, 102 S. Ct. 1883, 1899 n.26, teaches that the giving of preclusive effect to State or Federal agency administrative fact-finding serves the underlying general principles of *res judicata* which encompass the parties' interest in avoiding the costs and vexation of repetitive litigation and the public's interest in conserving judicial resources. (See *University of Tennessee v. Elliott* (1986), 478 U.S. 788, 797-98, 92 L. Ed. 2d 635, 645-46, 106 S. Ct. 3220, 3225.) This practice is particularly immune from challenge where the original agency determination is subject to a full review by an article III court. See *Thomas v. Union Carbide Agricultural Products Co.* (1985), 473 U.S. 568, 596 n.1, 87 L. Ed. 2d 409, 430 n.1, 105 S. Ct. 3325, 3341 n.1 (Brennan, J., concurring).

In Illinois, administrative decisions have *res judicata* and collat-

eral estoppel effect where a department's determination is made in proceedings that are adjudicatory, judicial, or quasi-judicial in nature. *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 51, 430 N.E.2d 620, 623.

The Department of Employment Security in this case provided a vehicle to allow the plaintiff/employer to appeal the Director's determination and assessment. The appeal process favors the Department, however, because the Director's decision is *prima facie* correct, and the burden is placed upon the protesting employer to prove that it is incorrect. (820 ILCS 405/2200 (West 1994).) Furthermore, the Department provides both the hearing forum and the ultimate fact finder.

In the instant case, the plaintiff objected to the Director's $7,225.41 assessment and petitioned for a hearing pursuant to section 2200. Following a hearing, the Director issued a decision amending her assessment to $869.69. The plaintiff did not appeal from this determination, and section 2204 made the Director's decision final and conclusive on all parties.

Subsequently, the Director increased the plaintiff's assessment to reflect an adjusted contribution rate and denied plaintiff a full refund based upon the same facts that were already determined in the first hearing. The defendants attempt to justify this second bite of the apple by cloaking their action in the folds of section 2200. We find no difference between the factual issues adjudicated before the Director's representative at the hearing on April 15, 1992, and the issue subsequently raised before the circuit court. The defendants had a full opportunity to adjudicate the issue of taxable wages and contributions due before their own representative and in their own forum. Plaintiff did not appeal this determination, and defendants are prohibited by logic from appealing their own decision. Therefore, the defendants are estopped by the doctrine of *res judicata* from relitigating this issue before the circuit court.

Now the Department is blatantly attempting and persisting in its effort to deny the plaintiff her right to a refund of the difference between what she paid under protest and the amount, unobjected to by the plaintiff, which the Director finally determined that the plaintiff owed in the Director's own administrative hearing. We should not and cannot condone the Department's circumvention of its own rules when the plaintiff has complied with the provisions of the Act. If the Department reneges on its own final administrative determination, then, according to the defendants' argument, the plaintiff's only recourse is to appeal to the circuit court for review and thereby allow the Department to relitigate the issue.

If the position of the defendants was adopted, there would be no

reason for an employer ever to request an administrative hearing. If the hearing resulted in a decision favorable to the employer, then the Director could ignore it and simply reassess, because according to the defendants they are not bound by their own decision. But if the decision favors the Director and is adverse to the employer, the decision is fully enforceable and the employer is fully bound. This argument, if it was the law, would render any remedy available to the employer a mere illusion, a mirage. For the decision of any adjudicative body to be more than a pretense, it must bind all those whose rights and liabilities were adjudicated. This principle is the heart of what distinguishes this case from *Winakor*. In *Winakor*, the initial assignment of a contribution rate came only from the Director. It did not result from an adversarial adjudicative process.

Because this situation could arise frequently, we must put a stop to it here and now, not only for the benefit of future employer/plaintiffs who obtain a final decision in an administrative hearing, but more importantly because we should not, as a matter of public policy, allow the Department of Employment Security to follow its own rules only when it is to its benefit to do so. *Cf. Vogt v. Bartelsmeyer* (1994), 264 Ill. App. 3d 165, 174, 636 N.E.2d 1185, 1191 (Lewis, J., concurring).

The State has no power that is not granted by *The People*. The employees of the State, whether they be directors of departments or file clerks, are *servants* of the people. Sometimes our public officials lose sight of this axiom. When the State establishes procedures to allow the people to resolve disputes with the State and when that procedure is followed, the State must be bound by the final decision issued. Any other standard renders the State unworthy of the trust placed in it by the people. When the State attempts to deviate from this principle, it is our duty to stop it. That duty has been fulfilled today.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KUEHN and WELCH, JJ., concur.