# Illinois Official Reports

## Appellate Court

---

*Perry & Associates, LLC v. Illinois Department of Employment Security,*
2017 IL App (1st) 143299

---

Appellate Court
Caption

PERRY & ASSOCIATES, LLC, Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY and THE DIRECTOR OF EMPLOYMENT SECURITY, Defendants-Appellees.

District & No.

First District, Fourth Division
Docket No. 1-14-3299

Rule 23 order filed      September 30, 2016
Rule 23 order
withdrawn                January 4, 2017
Opinion filed            February 2, 2017

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 14-L-50442; the Hon. Robert Lopez Cepero, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

Gregory F. Ladle, of John L. Ladle, P.C., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Mary C. Labrec, Assistant Attorney General, of counsel), for appellee.

Panel        JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff Perry & Associates, LLC, appeals from the circuit court's order affirming the administrative decision of defendants, the Illinois Department of Employment Security (Department) and the Director of Employment Security (Director), holding that the raise in plaintiff's rate for contributions to the Illinois Unemployment Insurance Trust Fund (Fund) for calendar year 2013 was proper. On appeal, plaintiff argues that the Department cannot retroactively change the contribution rate for an employer midyear because (1) this change violates the terms of section 1509 of the Unemployment Insurance Act (Act) (820 ILCS 405/1509 (West 2012)), (2) the unilateral ability to increase the rate at any time on any year violates public policy, (3) the retroactive application of the rate and imposition is improper, (4) the Department caused delays in proceedings by failing to provide a fair hearing such that it is inequitable to assess interest, and (5) the refusal to address the benefits to the claimant as a defense to the rate was improper.

¶ 2   Plaintiff is an architectural and structural engineering firm located in Chicago, Illinois, with Christopher J. Perry as the principal. In November 2011, plaintiff, through Perry, terminated the employment of the claimant Clarence Passons. Passons filed a claim for unemployment benefits with the Department. Plaintiff contested Passons unemployment claim, contending that Passons was ineligible due to misconduct.

¶ 3   The administrative proceedings over the benefits claim were complicated and lasted multiple years. Three hearings were conducted before two different referees. In December 2012, following the third hearing, the referee found that the claimant was terminated for misconduct and ineligible for benefits. Passons appealed to the Board of Review (Board), which reversed the referee's decision in April 2013. The Board concluded that the evidence did not support a finding of misconduct. Plaintiff sought review in the circuit court. In December 2013, the circuit court remanded the case to the Board with instructions to assess credibility in making its decision. In February 2014, the Board issued its new decision with credibility determinations and set aside the referee's decision. Plaintiff again filed for administrative review in the circuit court. In September 2014, the circuit court affirmed the Board's decision finding it was not clearly erroneous. Plaintiff filed an appeal with this court. We affirmed the Board's decision, finding the Board's determination that Passons was not terminated for misconduct under section 602A of the Act was not clearly erroneous and Passons was eligible for benefits. See *Perry & Associates, LLC v. Illinois Department of Employment Security*, 2016 IL App (1st) 143344-U. Plaintiff filed a petition for leave to appeal to the Illinois Supreme Court, which the court denied on September 28, 2016. *Perry & Associates, LLC v. Illinois Department of Employment Security*, No. 120799 (Ill. Sept. 28, 2016). Thus, our decision affirming the Board's finding that Passons was eligible for benefits is the final decision on the benefits case.

¶ 4        As a result of the December 2012 determination by the referee that Passons was ineligible for unemployment benefits, the benefit charges incurred by plaintiff due to payments made to Passons were cancelled. The Department reduced the rate at which plaintiff was required to make contributions to the Fund for the calendar year 2013 to the minimum rate of 0.55% of taxable wages. In April 2013, the Board issued its decision setting aside the referee's finding and found Passons eligible for benefits. In July 2013, the benefit charges were restored to plaintiff's account based on the Board's decision. The Department revised the contribution rate for calendar year 2013 to 2.85% of taxable wages, retroactive to the beginning of the year.

¶ 5        In August 2013, plaintiff filed a protest to the revised contribution rate. Plaintiff asked the Department to reverse the rate increase, arguing that it had a "substantial likelihood of prevailing" on the benefits case in the circuit court. The Director denied plaintiff's protest "unless and until" the circuit court ruled in plaintiff's favor. Plaintiff subsequently filed a protest and petition for hearing with the Department, asserting that "the computed rate is against the weight of the evidence of a chargeable claim due to repeated misconduct on the part of the Department" and the Board was "not authorized" to revise the contribution rate.

¶ 6        In October 2013, the Director's representative issued his recommended decision that the Director's decision denying plaintiff's application for review be affirmed. The findings of fact stated that plaintiff's 2013 contribution rate revision from the minimum 0.55% to the "experienced" 2.85% was "solely attributable to the addition to [plaintiff's] account of benefit charges" in the fourth quarter of 2011 and the first two quarters of 2012. All of the benefit charges related to the November 2011 termination of Passons. The Director's representative concluded that under section 1509 of the Act, the Director's orders are considered *prima facie* correct and the burden is on the protesting employer to prove that the decision is incorrect. The Director's representative found that plaintiff failed to meet its burden and that plaintiff failed to state a basis for relief under the facts or the law.

¶ 7        Plaintiff subsequently filed an objection to the recommended decision of the Director's representative. Plaintiff contended that section 1509 provides that the contribution rate is "final and conclusive" in all proceedings, and the Department cannot revise the contribution rate after the rate has been set. In November 2013, the Director remanded the case to his representative to conduct a hearing.

¶ 8        In March 2014, the Director's representative conducted a telephone hearing with Perry as the representative for plaintiff. Later in March 2014, following the hearing, the director's representative issued his recommended decision that the Director's order denying plaintiff's objection be affirmed. The second recommended decision is substantially similar to his prior recommendation.

¶ 9        In April 2014, plaintiff filed its objection to the recommended decision of the director's representative. Plaintiff raised several reasons for its objection. First, plaintiff argued that the recommended decision results in an unconstitutional retroactive tax. Plaintiff asserted that this was an "extraordinary" situation because it involved events more than two years ago and the extended time frame for adjudication was the fault of the Department. Next, the recommended decision was procedurally incorrect based on the Board's actions on the benefits case in 2013. Finally, the recommended decision is incompatible with the supreme court's decision in *Winakor v. Annunzio*, 409 Ill. 236 (1951), because in *Winakor*, the rate revision was made within the same operative tax year, whereas here the Department's actions have made the revision years later.

¶ 10        In May 2014, the Director issued his decision. The Director found that under section 1509 of the Act (820 ILCS 405/1509 (West 2012)), plaintiff was barred from contesting the amount of benefits charges used to calculate its contribution rate if the statement of benefit charges was served on plaintiff, and the record indicated that it was. The Director found that plaintiff's contentions regarding the benefit charges could be "solely resolved" by the resolution of the benefits case. The Director stated that he had no authority to disregard the decision of the Board and its finding that Passons was eligible for benefits had not been set aside. Accordingly, the contribution rate for 2013 was correct.

¶ 11        Further, the Director observed that the Department's authority to issue revised contribution rate determinations was established in *Winakor* and is not unconstitutional. The Director also noted that interest on additional contributions due to an upwardly revised contribution rate would be waived if the employer pays the additional contributions within 30 days after the notice of the revised contribution rate was mailed. See 56 Ill. Adm. Code 2765.63 (1987). If the employer failed to pay the additional contributions within 30 days, then interest would begin to accrue on the unpaid balance on the account from the date that the original contributions accrued. If the revised contribution rate was later set aside, then employer's remedy was to seek a refund under section 2201 of the Act. 820 ILCS 405/2201 (West 2012). See also *Northern Trust Co. v. Bernardi*, 115 Ill. 2d 354 (1987). The Director overruled plaintiff's objections and adopted the recommended decision of his representative. The August 2013 order denying plaintiff's application for review of its contribution rate was affirmed.

¶ 12        In June 2014, plaintiff filed a petition for administrative review in the circuit court. In September 2014, the circuit court affirmed the Director's decision, finding the decision was not clearly erroneous.

¶ 13        This appeal followed. We note that this court stayed proceedings in this appeal of the rate case pending resolution of the benefits case because a ruling in favor of plaintiff would have rendered the appeal in this case moot. Since this court affirmed the Board's finding that Passons was eligible for unemployment benefits, the stay was lifted and the proceedings resumed. See *Perry*, 2016 IL App (1st) 143344-U.

¶ 14        On appeal, plaintiff argues that (1) the Department lacks the authority to revise an employer's contribution rate during a calendar year, (2) the Department could not charge plaintiff for interest and penalties on the additional contributions due after the contribution rate was upwardly revised, and (3) the Director failed to address plaintiff's claim that its contribution rate was too high because the Department did not reduce Passons's benefits based on his other sources of income.

¶ 15        Initially, we note that plaintiff's brief fails to comply with Illinois Supreme Court Rule 341(h)(6), which requires the party to provide a statement of facts with the appropriate citations to the record. Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016). Plaintiff's statement of facts contains a single citation to the record on appeal for the circuit court's order affirming the Director's decision. We further point out that plaintiff's reply brief contains an inappropriate internal notation referencing an Illinois Supreme Court decision where the holding is counter to plaintiff's argument on appeal.

¶ 16        When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). The Administrative Review Law provides that judicial review of an

administrative agency decision shall extend to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2012). Further, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." *Id.* "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)).

¶ 17    "A mixed question of law and fact asks the legal effect of a given set of facts." *Id.* at 472. Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated. *AFM Messenger*, 198 Ill. 2d at 391. A mixed question of law and fact is reviewed under the clearly erroneous standard. *Comprehensive Community*, 216 Ill. 2d at 472.

¶ 18    The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the *de novo* standard, and as such, it grants some deference to the agency's decision. *AFM Messenger*, 198 Ill. 2d at 392. "[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "If there is any evidence in the record to support the Board's decision, that decision is not contrary to the manifest weight of the evidence and must be sustained on review." *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 19    The parties disagree on the appropriate standard of review. Plaintiff asserts that the standard of review of an administrative agency's decision is clearly erroneous. The Department contends this court should review the Department's decision *de novo* because the appeal raises only a question of law. We need not determine which standard of review is correct because plaintiff's arguments fail under both standards.

¶ 20    "The Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2004)) was enacted to provide economic relief to individuals who become involuntarily unemployed." *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006). "The Act recognizes that involuntary unemployment not only burdens unemployed individuals and their families but also threatens the health, safety, morals, and welfare of all Illinois citizens." *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 23 (citing 820 ILCS 405/100 (West 2012)).

> "[T]he Act establishes a system to collect contributions from employers and to pay benefits to eligible unemployed persons. The primary source of income to the Illinois Unemployment Trust Fund is contributions assessed from Illinois employers. Although initially each employer must contribute to the fund according to a statutory rate, the Department, after a prescribed time, determines an employer's individual, variable contribution rate through use of an experience rating system. Under this system, the cost of fund replenishment among employers is allocated on the basis of their experience with the risk of unemployment." *Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security*, 131 Ill. 2d 23, 28 (1989).

¶ 21 Section 1503.1(C)(3) provides that the contribution rate is determined in part by the benefits charges in the 36-month period ending on June 30, 2012. 820 ILCS 405/1503.1(C)(3) (West 2012). Passons was terminated in November 2011, and the disputed benefits would have been paid within the relevant period from November 2011 to June 2012.

¶ 22 The crux of plaintiff's argument on appeal is whether the Department had the authority to revise plaintiff's contribution rate during the relevant calendar year and apply the revision retroactively. The reason behind the revision was the ongoing litigation in the benefits case. When the contribution rate was initially set in December 2012, the hearing officer had found Passons ineligible for benefits. The benefit charges were removed from plaintiff's account and the rate reflected this standing. However, in April 2013, the Board reversed the finding of the hearing officer and reinstated Passons's benefits. The benefit charges were reassessed to plaintiff. The Department then revised plaintiff's contribution rate, taking into account the payments of unemployment benefits to Passons. The holding that Passons was eligible for unemployment benefits remains in effect.

¶ 23 Plaintiff contends that section 1509 of the Act does not contemplate the revision of a contribution rate by the Department. Section 1509 provides, in relevant part:

"The Director shall promptly notify each employer of his rate of contribution for each calendar year by mailing notice thereof to his last known address. Such rate determination shall be final and conclusive upon the employer for all purposes and in all proceedings whatsoever unless within 15 days after mailing of notice thereof, the employer files with the Director an application for review of such rate determination, setting forth his reasons in support thereof." 820 ILCS 405/1509 (West 2012).

¶ 24 Plaintiff interprets section 1509's setting of the rate as "final and conclusive" on both parties, the employer and the Department. However, this interpretation was rejected by the Illinois Supreme Court in *Winakor v. Annunzio*, 409 Ill. 236 (1951). In *Winakor*, one of the employer plaintiffs contended that the lower contribution rate became "final and conclusive upon the expiration of fifteen days and that, consequently, the action of the Director in revoking this rate and assigning a new rate of 2.7 was a nullity." *Id.* at 248. The employer relied on a previous version of section 1509 containing the same language quoted above, section 18(c)(7)(C) of the Unemployment Compensation Act (Ill. Rev. Stat. 1947, ch. 48, ¶ 234(c)(7)(C) (now codified as 820 ILCS 405/1509)). *Winakor*, 409 Ill. at 248-49.

¶ 25 The supreme court held that the statute was not binding on the Department.

"Section 18(c)(7)(C) does not support the contention made. It is to be observed that, while the statute specifically makes the rate determination binding upon the employer, it does not make it binding upon the Director, either expressly or by implication. The relief of unemployment is a public purpose and the Unemployment Compensation Act is an exertion of the police power of the State. [Citation.] The State has a direct interest in the administration and enforcement of the act paramount to the personal interest of the individual employer. [Citation.] It is well established that a governmental agency, unless expressly included within the terms of a statute of limitation, is excluded from the operation of the statute so far as public rights, as distinguished from private rights, are concerned. [Citations.] In the absence of an express provision making an original rate determination conclusive upon the Director, it follows that the rate determination of July 29, 1948, was properly and effectively revoked on October 19, 1948." *Id.* at 249.

¶ 26     We are not persuaded by plaintiff's assertions that *Winakor* is inapplicable. Plaintiff characterizes the holding in *Winakor* as giving the Department "*carte blanche*" to revise an employer's contribution rate "whenever it so chooses." Neither *Winakor* nor the actions in the instant case suggest that the Department can revise a contribution rate absent a change in circumstances, and we decline to interpret the decision as giving such power. Rather, *Winakor* established that the "final and conclusive" language in section 1509 is not applicable to the Department, and therefore, the Department's revision of plaintiff's contribution rate was not barred by section 1509.

¶ 27     Contrary to plaintiff's contention, the Fifth District decision in *Marco v. Doherty*, 276 Ill. App. 3d 121 (1995), does not affect the applicability of *Winakor* in the present case. In *Marco*, the issue on appeal was whether the Director could "retroactively increase an employer's contribution amount after having issued a final decision that adjudicated the contribution amount based upon the findings of fact and recommendations of the Director's representative in an administrative hearing." *Id.* There, the employer had adjudicated the Director's assessment of unpaid contributions, interest, and penalties through the administrative process after paying the amount under protest. The Director entered a final decision setting the contribution rate and subsequently, the employer was assessed an amount lower than the original assessment. The employer did not appeal the decision and subsequently filed a claim for a refund. The Director issued a partial refund with the explanation that it revised the employer's rate and the employer owed more than what was determined in her decision. The employer appealed and the reviewing court held that the Director does not have the authority to change its own final decisions retroactively. *Id.* at 122-24.

¶ 28     The Department cited *Winakor* as support for its authority to revise the rate, but the reviewing court found *Winakor* inapplicable to the circumstances in the case.

> "We find that *Winakor* is inapplicable because it does not address the binding effect of a Director's 'Final Decision' issued following an adjudicatory administrative hearing. *Winakor* involved the assignment of a contribution rate by the Director. This rate was not determined at an administrative hearing. Later, the Director changed the assigned rate, and the employer appealed through the administrative process and ultimately through the courts. Because the initial rate assigned was not the result of an adjudicatory process, the holding in *Winakor* fails to address the issue before us." *Id.* at 123-24.

¶ 29     The decision in *Marco* was limited to the specific circumstances in which the Department overreached its statutory authority. The same situation is not present in this case, which is more analogous to *Winakor*. Further, *Marco* did not limit the holding of *Winakor*, as plaintiff incorrectly asserts. Additionally, we reject plaintiff's public policy argument as it repeats the same assertions made when arguing that *Winakor* was inapplicable, which we have already considered.

¶ 30     Plaintiff also propounds contradictory positions on the applicability of section 2200 of the Act. First, plaintiff observes that the Director did not rely on that section in his decision. But then contends that section 2200 is applicable only when the employer has become liable for the payment of any contributions, interest, or penalties not originally incurred by him. We find plaintiff's interpretation of section 2200 of the Act to be misleading.

¶ 31     Section 2200 sets forth five independent grounds for the Director to "determine and assess the amount of such contributions or deficiency, as the case may be, together with interest and

penalties due and unpaid." 820 ILCS 405/2200 (West 2012). Plaintiff has referred to only one of the five grounds for the suggestion that section 2200 is not applicable. First, section 2200 does not involve the determination of an employer's contribution rate to the Fund. Rather, this section covers the Director's ability to determine and assess the amount of the contributions to the Fund.

¶ 32    Nevertheless, to the extent that section 2200 is applicable in this case, the relevant basis for the Director's authority arises under either of these two provisions: (1) "[i]f it shall appear to the Director that any employing unit or person has failed to pay any contribution, interest or penalty as and when required by the provisions of this Act or by any rule or regulation of the Director," or (2) "if the amount of any contribution payment made by an employing unit for any period is deemed by the Director to be incorrect in that it does not include all contributions payable for such period." *Id.* Here, the Director revised the contribution rate after Passons's benefits were reinstated, and accordingly, the amount of plaintiff's contributions was incorrect. Further, plaintiff failed to pay the additional contributions as required.

¶ 33    Plaintiff next contends that the Director improperly assessed interest on the retroactive additional contributions. However, the Director had explicit authority to assess interest under the Illinois Administrative Code. Section 2765.63 provides for the imposition of interest as a consequence of upwards revision of the contribution rate. Under section 2765.63(a), the employer is allowed a 30-day period in which to pay the additional contributions due for that calendar year. 56 Ill. Adm. Code 2765.63(a) (1987). Section 2765.63(c) further provides:

"If an employer fails to pay the full amount of additional contributions due as a result of an upward revision to its contribution rate within 30 days of the date of mailing of such revised rate notice, the additional contributions due as a result of this higher rate shall accrue and become payable on the date the original contributions for that calendar year accrued and became payable in accordance with Section 1400 of the Act." 56 Ill. Adm. Code 2765.63(c) (1987).

¶ 34    Under section 2765.63(c)(1), if an employer fails to pay the additional contributions within 30 days, then "[i]nterest shall accrue on the unpaid balance of the employer's account from the date that the original contributions accrued and became payable." 56 Ill. Adm. Code 2765.63(c)(1)(1987).

¶ 35    Moreover, the Illinois Supreme Court in *Northern Trust Co. v. Bernardi*, 115 Ill. 2d 354, 368 (1987), has approved of this assessment of this interest.

"In fact, section 1401 requires that an employer pay interest if he has not paid contributions 'when required of him by the provisions of this Act and the rules and regulations of the Director, *whether or not the amount thereof has been determined and assessed by the Director*.' (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 48, par. 551.) The law further provides that interest shall begin to accrue 'from the day upon which said contribution became due.' (Ill. Rev. Stat. 1981, ch. 48, par. 551.) *** Thus, interest on deficiencies accumulates from the date the deficient contributions were due, not the date on which those deficiencies are later discovered. To hold otherwise would unjustly enrich an employer, at the trust fund's expense, by allowing the employer to retain profits earned with the use of the deficient sums between the dates they were due and demand was made." *Id.*

See also 820 ILCS 405/1401 (West 2012).

¶ 36     Other than the internal notation in which plaintiff admits the holding is against its position, plaintiff fails to address the supreme court's holding in *Northern Trust*. We find that *Northern Trust* forecloses plaintiff's argument, and the assessment of interest was proper under the Act. Plaintiff could have avoided the accrual of any interest if it had paid the additional contributions under protest within 30 days of notification of the revised contribution rate and the amounts owing. Plaintiff failed to do so, and the interest was properly assessed.

¶ 37     Finally, plaintiff raises two arguments relating to the proceedings in the benefits case as having an impact on the revision of the contribution. First, plaintiff contends that it was inequitable to revise the contribution rate because of delays in the administrative process. Plaintiff complains of the hearing officer in the benefits case that considered the case twice, but was later removed and the case was considered by a new hearing officer. Plaintiff claims that these circumstances caused delay and considerable time and expense. However, these circumstances have no bearing on the determination of plaintiff's contribution rate.

¶ 38     The contribution rate was revised as a result of the Board's reversal of the third administrative hearing before the new hearing officer. The revised rate and additional contributions were only applicable to calendar year 2013. Again, if plaintiff had paid the additional contributions under protest, no interest would have been assessed. Plaintiff's complaints regarding the benefits case are irrelevant to the instant case.

¶ 39     Second, plaintiff asserts that the Director erred in refusing to consider its claim that Passons received other sources of income and that such income should have reduced Passons's benefits and plaintiff's contribution rate. The Director found plaintiff's argument to be barred because plaintiff was served with a statement of benefit charges. Section 1509 provides, in relevant part, "[i]n any such proceeding, the employer shall be barred from questioning the amount of the benefit wages or benefit charges as shown on any statement of benefit wages or statement of benefit charges which forms the basis for the computation of such rate unless such employer shall prove that he was not, as provided in Section 1508, furnished with such statement containing the benefit wages or benefit charges which he maintains are erroneous." 820 ILCS 405/1509 (West 2012). Plaintiff cannot challenge the amount of benefit charges in a challenge of the contribution rate. The appropriate forum to challenge the benefit charges, and specifically the amount of benefits Passons received, is as part of a benefit action. This is not the proper forum and we decline to consider the merits of this claim.

¶ 40     Based on the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41     Affirmed.