CONNIE FOLEY *et al.*, Plaintiffs-Appellants, v. AMERICAN FEDERA-
TION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, Council
31, Local No. 2258, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—0603

Opinion filed April 30, 1990.—Rehearing denied June 28, 1990.

Clara L. Larry and Mary A. Kenny, both of Chicago, for appellants.

Cornfield & Feldman, of Chicago (Milissa J. Auerbach, of counsel), for appellee American Federation of State, County, and Municipal Employees, Council 31, Local No. 2258.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellees Illinois Department of Corrections and Illinois Department of Central Management Services.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from an action brought by Connie Foley and Baxter Burke (plaintiffs) to recover damages for breach of the duty of fair representation by the American Federation of State, County, and Municipal Employees, Council 31, Local No. 2258 (the union) and the breach of a collective bargaining agreement by the Illinois Department of Corrections and Illinois Department of Central Management Services. Pursuant to section 2—619(a)(1) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(1)), the circuit court of Cook County dismissed plaintiffs' complaint for lack of subject matter jurisdiction. Plaintiffs appeal the dismissal of their com-

plaint and raise the following issues for our review: (1) whether the circuit court erred in finding that the Illinois State Labor Relations Board (the Board) had exclusive jurisdiction over plaintiffs' breach of duty of fair representation claim against the union and (2) whether the circuit court erred in barring plaintiffs' claim against the Illinois Department of Corrections and Illinois Department of Central Management Services (the State) on the grounds of sovereign immunity. For the reasons set forth below, we affirm.

Plaintiffs were employed by the State as parole officers and also were members of the union that had entered into a collective bargaining agreement (the Agreement) with the State. The pertinent provisions of the Agreement provided that "in cases of promotion, *** seniority shall prevail unless a less senior employee has demonstrably superior skill and ability to perform the work required in the position classification."

In December 1984, the State filled promotional positions with employees that possessed less seniority than plaintiffs and with individuals outside the bargaining units. Plaintiffs subsequently filed a grievance with the union, claiming that the State's actions breached the Agreement. The union processed plaintiffs' grievance through the third step of the grievance procedure established by the Agreement. Thereafter, the union determined that the grievance could not prevail at arbitration and ceased further processing of plaintiffs' grievance.

On April 11, 1988, plaintiffs filed a complaint in the circuit court of Cook County, alleging that the union had breached its statutory duty of fair representation owed to plaintiffs under the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*) and that the State breached its collective bargaining agreement. Plaintiffs sought $80,000 in damages from the union and the State, respectively.

The circuit court granted the union's and the State's motions to dismiss plaintiffs' suit on the grounds that it lacked subject matter jurisdiction. As to the union, the circuit court determined that breach of a duty of fair representation is an unfair labor practice and therefore within the exclusive jurisdiction of the Board. As to the State, the circuit court found that the sovereign immunity doctrine barred plaintiffs' action.

On appeal, plaintiffs first contend that the statutory enumerations of unfair labor practices under the Act do not encompass the breach of a union's duty of fair representation. Plaintiffs therefore argue that they are entitled to bring suit in the circuit court. We disagree.

The Board has held that the Act imposes upon exclusive repre-

sentatives the duty of fair representation and that an exclusive bargaining representative commits an unfair labor practice pursuant to section 10(b)(1) of the Act when it fails to fairly represent the interest of all members of a bargaining unit as required by section 6(d) of the Act. (*Sosner & American Federation of State, County & Municipal Employees (AFSCME), Local 1006*, 2 Pub. Employee Rep. (Ill.) par. 2004, at V11-17, No. S—CB—7 (Illinois State Labor Relations Board November 20, 1985.) Section 6(d) of the Act states the following:

"(d) Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of all public employees in the unit. Nothing herein shall be construed to limit an exclusive representative's right to exercise its discretion to refuse to process grievances of employees that are unmeritorious." (Ill. Rev. Stat. 1987, ch. 48, par. 1606(d).)

In *Eugene Mathis & American Federation of State, County & Municipal Employees*, 4 Pub. Employee Rep. (Ill.) par. 2049, at 342, No. S—CB—87—35 (Illinois State Labor Relations Board November 17, 1988), the Board adopted a standard governing fair representation cases. The Board stated the following:

"As we held in *AFSCME, Local 1006 (Sosner)*, 2 PERI par. 2004 (ISLRB 1985), the Act imposes upon labor organizations representing public employees a 'duty of fair representation.' This duty is predicated upon Section 6(c), which provides that a labor organization that has the support of a majority of employees in a bargaining unit shall be certified as the exclusive bargaining representative of those employees, and Section 6(d), which provides that exclusive bargaining representatives have a duty to represent all of the employees in the bargaining unit. A labor organization that does not adequately do so 'restrains or coerces' employees within the meaning of Section 10(b)(1)." (*Eugene Mathis & American Federation of State, County & Municipal Employees*, 4 Pub. Employee Rep. (Ill.) par. 2049, at 342, No. S—CB—87—35 (Illinois State Labor Relations Board November 17, 1988).)

Section 10(b)(1) states:

"(b) It shall be an unfair labor practice for a labor organization or its agents:

(1) to restrain or coerce public employees in the exercise of the rights guaranteed in this Act, provided (i) that this paragraph shall not impair the right of a labor organization to pre-

scribe its own rules with respect to the acquisition or retention of membership therein or the determination of fair share payments and (ii) that a labor organization or its agents shall commit an unfair labor practice under this paragraph in duty of fair representation cases only by intentional misconduct in representing employees under this Act." Ill. Rev. Stat., 1989 Supp., ch. 48, par. 1610(b)(1).

■■ From the above, it is established that a union's breach of duty of fair representation is an unfair labor practice under the Act. As such, it is subject to the Act's comprehensive scheme of remedies and administrative procedures.

Contained in section 5 of the Act are provisions that confer upon the Board exclusive jurisdiction over duty of fair representation claims. (Ill. Rev. Stat. 1987, ch. 48, par. 1605.) Final orders issued by the Board are appealable directly to the appellate court. (Ill. Rev. Stat. 1987, ch. 48, par. 1611(e).) No provision exists in the Act which authorizes public employees to file suit in the circuit court, alleging a union's breach of duty of fair representation.

■■ We further find that the circuit court was justified in relying upon our supreme court's decision in *Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149. In *Compton*, the supreme court held that the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*) divests the circuit court of jurisdiction to vacate or enforce arbitration awards pursuant to the Uniform Arbitration Act even though no express language appears in the IELRA which divests the courts of such jurisdiction. Plaintiffs argue that *Compton* is distinguishable from the instant case because it involved the issue of vacating arbitration awards under the IELRA. While we agree with plaintiffs that *Compton* is distinguishable from the instant case, we nevertheless adopt *Compton*'s policy rationale as applicable here to divest circuit courts of jurisdiction to hear breach of duty of fair representation claims. The Illinois Supreme Court in *Compton* stated the following:

"If jurisdiction over an award is to be divided between the Board and the circuit courts, it will often be difficult to know in advance where suit should be brought. Conflicting judgments and forum shopping will imperil the uniformity which the [IELRA] obviously seeks to achieve." (*Compton*, 123 Ill. 2d at 222, 526 N.E.2d at 152.)

Because the Illinois Public Labor Relations Act and the IELRA were both enacted to provide "a comprehensive regulatory scheme for pub-

lic sector collective bargaining in Illinois" (*Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 530, 491 N.E.2d 1259, 1261), we find that the *Compton* policy concerns are equally applicable to the case at bar. Inconsistent judgments and forum shopping will be inevitable if we pronounce a rule whereby breach of the duty of fair representation claims can be maintained in the circuit courts, as well as before the Board. Furthermore, our already overburdened court system would face increased amounts of unnecessary litigation.

In an attempt to persuade us that concurrent jurisdiction exists between the circuit court and the Board, plaintiffs direct our attention to the National Labor Relations Act (NLRA) and Federal case law. The United States Supreme Court has found a cause of action to exist in Federal court for breach of the duty of fair representation even though the same claim may also be brought before the National Labor Relations Board. (*Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903.) The Supreme Court's decision was primarily based upon the fact that under the NLRA, the General Counsel of the National Labor Relations Board has unreviewable discretion to refuse to institute an unfair labor practice complaint and retains the final authority to prosecute such complaint before the National Labor Relations Board. (*Vaca*, 386 U.S. at 182, 17 L. Ed. 2d at 853, 87 S. Ct. at 913; see also *National Labor Relations Board v. Sears, Roebuck & Co.* (1975), 421 U.S. 132, 44 L. Ed. 2d 29, 95 S. Ct. 1504; 29 U.S.C. §153(d) (1983).) The Supreme Court held that if employees were precluded from bringing duty of fair representation claims in the courts, employees injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of their claims due to the General Counsel's unreviewable discretion to refuse to institute an unfair labor practice complaint. *Vaca*, 386 U.S. at 182, 17 L. Ed. 2d at 853, 87 S. Ct. at 913.

Unlike the NLRA, the Act here sets forth explicit standards by which the Board must determine whether to issue an unfair labor practice complaint. (See Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) Under the Act, once a complaint is issued, the charging party, rather than the General Counsel, prosecutes his own case. (80 Ill. Adm. Code §1220.50(e) (Supp. 1988).) The Board's rules and regulations further provide that a decision on the part of the Board's Executive Director not to issue an unfair labor practice complaint is appealable to the Board itself. (80 Ill. Adm. Code §1220.40(b)(4) (Supp. 1988).) A final decision of the Board refusing to issue a complaint is reviewable on administrative review in the appellate court pursuant to section 11(e)

of the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 1611(e).) We believe that sufficient safeguards are prevalent in the Act which adequately protect an individual from any prejudice that may result from the Board's exclusive jurisdiction. Although the Act was patterned after the NLRA, it has distinct provisions, properly setting it apart from the Federal legislation. (See *Village of Wheeling v. Illinois State Labor Relations Board* (1988), 170 Ill. App. 3d 934, 524 N.E.2d 958, *appeal allowed* (1988), 122 Ill. 2d 596, 530 N.E.2d 266.) A reasonable basis does not exist to find that employees under the Act would be left unprotected by exclusive Board jurisdiction, and we therefore refuse to subvert the clear language of the Act and established principles of law. Accordingly, we uphold the circuit court's determination that breach of a duty of fair representation is an unfair labor practice within the Board's exclusive jurisdiction.

■ As to plaintiffs' claim against the State, plaintiffs contend that the circuit court erred in applying the doctrine of sovereign immunity because their action is not against the State of Illinois. We believe that plaintiffs' claim is against the State of Illinois, and hence, one that should have been brought in the Court of Claims.

Although the Illinois Constitution abolished sovereign immunity (Ill. Const. 1970, art. XIII, §4), the legislature, acting under its constitutional authority, partially reinstated the doctrine by passing "An Act in relation to immunity for the State of Illinois" (the Immunity Statute), which provides that "except as provided in 'An Act to create the Court of Claims ***,' the State of Illinois shall not be made a defendant or party in any court" (Ill. Rev. Stat. 1987, ch. 127, par. 801). The Court of Claims Act (Ill. Rev. Stat. 1987, ch. 37, par. 439.1 through 439.24—9) establishes a Court of Claims to serve as a forum for actions against the State. Section 8(b) of the Court of Claims Act provides:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

* * *

(b) All claims against the state founded upon any contract entered into with the State of Illinois." Ill. Rev. Stat. 1987, ch. 37, par. 439.8(b).

■ The determination of whether an action is in fact one against the State and, therefore, one that must be brought in the Court of Claims, depends not on the formal identification of the parties, but rather on the issues involved and the relief sought. (*Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240; *Smith v. Jones* (1986), 113 Ill. 2d 126, 497 N.E.2d 738; *Herget National Bank v. Kenney* (1985),

105 Ill. 2d 405, 475 N.E.2d 863; *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029; *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d 1242; *Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 101 N.E.2d 71.) "Thus, the prohibition 'against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.' " (*Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247, quoting *Sass v. Kramer* (1978), 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977.) If a judgment for a plaintiff could operate to control the actions of the State or subject it to liability, it will be deemed an action against the State, and the circuit court is without jurisdiction to entertain the action. *Local 3236 v. Illinois State Board of Education* (1984), 121 Ill. App. 3d 160, 459 N.E.2d 300; *G.H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 877, 333 N.E.2d 261, 264.

Relying primarily on *People ex rel. Board of Trustees of University of Illinois v. Illinois Toll Highway Comm'n* (1954), 3 Ill. 2d 218, 120 N.E.2d 35, and *People v. Barnett* (1943), 382 Ill. 321, 46 N.E. 951, plaintiffs argue that the instant suit is not against the State, but against the Illinois Department of Corrections and Illinois Department of Central Management Services as independent legal entities. Plaintiffs' argument is without merit.

Both cases cited above by plaintiffs are distinguishable from the instant case. In *Illinois Toll Highway Comm'n*, the court found that the Commission was an independent entity and not a department of the State because it had the power to issue bonds and enter into contractual obligations from which the Commission, and not the State, was liable and because the Commission could utilize the funds solely for highway purposes. (*Illinois Toll Highway Comm'n*, 3 Ill. 2d 218, 120 N.E.2d 35.) In effect, the Commission was solely responsible for raising and spending its own funds.

In *Barnett*, the court found that the University of Illinois was created as a public corporation for the specific purpose of operating and administering the university. (*Barnett*, 382 Ill. 321, 46 N.E. 951.) As such, the university possessed a high degree of autonomy in the management of its duties and finances, it held property only as trustee of the State, its liability was limited to the amount contained in the university's funds, and the trustees of the board were not officers of the State.

■ Unlike *Illinois Toll Highway Comm'n* and *Barnett*, the Illi-

nois Department of Corrections and Illinois Department of Central Management Services do not function as independent legal entities, nor were they created as separate legal entities, from the State of Illinois. They are departments of the State. A department of State government is a part, or division, of the government, and a suit against a department of the State is a suit against the State. *Local 3236*, 121 Ill. App. 3d at 164, 459 N.E.2d at 302-03; *Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, 1074, 441 N.E.2d 904, 906, *aff'd* (1983), 99 Ill. 2d 44, 457 N.E.2d 403; see also *Noorman v. Department of Public Works & Buildings* (1937), 366 Ill. 216, 8 N.E. 637.

Because a judgment against the Illinois Department of Corrections and Illinois Department of Central Management Services here would effectively be against the State of Illinois, and such judgment could control the actions of the State in relation to its dealings with unions and their members, it is our view that plaintiffs' claim is against the State of Illinois for purposes of the immunity statute. To hold otherwise would render meaningless section 8(b) of the Court of Claims Act, which provides that the Illinois Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the state founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1987, ch. 37, par. 439.8(b).) Accordingly, we uphold the circuit court's dismissal of plaintiffs' complaint against the State for lack of subject matter jurisdiction.

For all of the foregoing reasons, the order of the circuit court of Cook County dismissing plaintiffs' complaint is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.