# Illinois Official Reports

## Appellate Court

***Knox v. Chicago Transit Authority*, 2018 IL App (1st) 162265**

| | |
|---|---|
| Appellate Court Caption | JAMES KNOX, Plaintiff-Appellant, v. THE CHICAGO TRANSIT AUTHORITY, Defendant-Appellee and Third-Party Plaintiff (Amalgamated Transit Union Local 1241, Third-Party Defendant-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-2265 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 22, 2018<br><br>April 18, 2018<br>April 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-6475; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Halil G. Hampton, of HGH Law Firm, Ltd., of Chicago, for appellant.<br><br>Karen G. Seimetz, Stephen Wood, and Rachel Kaplan, of Chicago Transit Authority Law Department, of Chicago, for appellee Chicago Transit Authority. |

Ronald M. Willis and Josiah A. Groff, of Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, of Chicago, for other appellee.

Panel           JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, James Knox, appeals the circuit court's dismissal of his complaint seeking relief in the form of back pay and benefits related to the reinstatement of his employment at the Chicago Transit Authority (CTA). The trial court dismissed plaintiff's amended complaint, finding that it lacked subject matter jurisdiction over the matter. In this court, plaintiff argues that the dismissal was improper.

¶ 2      The record shows that plaintiff was a member of Amalgamated Transit Union Local 1241 (Union) and employed by the CTA. Plaintiff was terminated on January 24, 2013, and grieved his termination pursuant to his collective bargaining agreement, which provided that disputes concerning the discharge of a Union employee were to be submitted to arbitration. Before the arbitrator, the CTA maintained that plaintiff had violated a Last Chance Agreement by engaging in misconduct on November 29, 2012, specifically, that he had failed to comply with work orders and falsely represented what he had been doing that day in verbal and written reports. On July 22, 2013, after hearing the evidence related to the alleged misconduct, the arbitrator found that the evidence established plaintiff's misconduct and that the CTA had "good cause for their finding that [plaintiff] had violated the last Chance Agreement." Specifically, the arbitrator noted that plaintiff testified that he began his shift at 2 p.m., and the evidence established that he had not performed the required inventory counts that he had been directed to perform as of 3:30 p.m., when his supervisor arrived and found that the inventory forms were blank and that plaintiff "was wearing gym shoes."

¶ 3      Although plaintiff claimed that he had been talking to a coworker for an hour and 15 minutes, the arbitrator found that the timeline of plaintiff's version of events was inconsistent and concluded that plaintiff had "falsely represented in both verbal and written reports" what he had been doing that afternoon. The arbitrator noted, however, that plaintiff "had been retained on the payroll until January 24[,] 2013 without having been given any prior indication that he would be disciplined for the November 2012 misconduct." Due to the delay, the arbitrator concluded that plaintiff "was treated arbitrarily, without due process and [wa]s entitled to be offered reinstatement." However, "[c]onsidering his offense," the arbitrator found that plaintiff was "not entitled to back pay or benefits." (Emphasis omitted.)

¶ 4      Following the arbitrator's decision, plaintiff filed a complaint for declaratory judgment and other relief against the CTA in the circuit court on April 15, 2014, seeking an award of back pay and benefits. He alleged that the denial of back pay and benefits violated section 12.6 of the collective bargaining agreement, which provided that, "[a]ny Employee, who, upon

investigation, is found to have been discharged or suspended unjustly shall be reinstated and reimbursed for all time lost for such discharge or suspension." Plaintiff sought "a declaration by the Court finding that pursuant to Section 12.6 of the Collective Bargaining Agreement, [p]laintiff is entitled to back pay and benefits." Plaintiff also argued that the collective bargaining agreement "constituted a bi[n]ding and enforceable contract between [p]laintiff and [the CTA]" and that the CTA breached that contract. Plaintiff sought damages equal to his "loss of salary, reimbursement of health insurance costs and reimbursement for moving expenses" as well as "reasonable attorney[ ] fees."

¶ 5        The CTA filed a motion to dismiss on June 13, 2014. In that motion, the CTA contended that plaintiff failed to allege a violation of the collective bargaining agreement, where the CTA and the Union had agreed to final and binding arbitration, and there were no allegations that the CTA had not complied with the arbitration award. The CTA also argued that plaintiff's request for declaratory relief should be dismissed because it "hinges on *** [his] breach of contract claim, and does not allege any independent legal interest to state a claim for declaratory relief." The CTA further argued that plaintiff lacked standing to challenge a breach of the collective bargaining agreement because he is not a party to the agreement and because "Illinois law specifically prohibits individual employees from bringing a suit to overturn the outcome of a grievance procedure or arbitration under a collective bargaining agreement absent exceptional circumstances."

¶ 6        Plaintiff filed a response to the CTA's motion to dismiss on August 14, 2014. Plaintiff acknowledged that "it appears to be true, that under most circumstances an individual, unionized employee lacks standing to challenge an arbitration award, which was made pursuant to a [collective bargaining agreement.]" However, plaintiff contended that his case fit into an "exception to th[at] rule" because "the U.S. Supreme Court has found that an employee does in fact have standing to challenge an arbitration decision, where it can be shown that the employee's union failed to fairly represent the employee—thereby leaving the employee with no other recourse other [*sic*] than to seek relief at the trial level" (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). Plaintiff further argued that the Illinois Supreme Court "adopted this reasoning ***, specifically finding that a union employee does have standing to challenge an arbitration decision, where it can be shown that the employees [*sic*] union did not provide fair and adequate representation during the grievance procedure and arbitration" (citing *Stahulak v. City of Chicago*, 184 Ill. 2d 176 (1998)). Plaintiff contended that his union did not provide him fair representation, and, accordingly, he had standing "to independently challenge [the CTA's] breach of the [collective bargaining agreement]."

¶ 7        On October 8, 2014, the trial court struck plaintiff's complaint "for failure to plead allegations raised in Plaintiff's Response to [the CTA]'s Motion to Dismiss," and granted plaintiff time to file an amended complaint to add those allegations. Plaintiff filed his amended complaint on November 12, 2014, which raised additional allegations regarding the Union's duty of fair representation. Specifically, in the amended complaint, plaintiff alleged that, "despite [p]laintiff's insistence, *** the Union attorney did not bring up the issue of back pay and benefits" during the arbitration hearing. After receiving the decision, plaintiff "informed his Union rep that he wanted the Union to challenge the decision to deny his back-pay and benefits" but "the Union rep informed [p]laintiff that he had no other recourse than to seek outside counsel and that the Union would be taking no further action." Plaintiff further argued that the "failure of the Union to raise the issue of back-pay and benefits at the arbitration

hearing and its subsequent refusal to challenge the decision to deny back-pay and benefits, constituted a breach of the Union's duty of fair representation to [p]laintiff."

¶ 8    In December 2014, the CTA filed a motion to dismiss plaintiff's amended complaint. In that motion, the CTA contended that plaintiff's claims were barred by collateral estoppel and *res judicata* because they had been previously litigated to final judgment through the grievance arbitration process. The CTA continued to argue that plaintiff lacked standing to challenge a breach of the collective bargaining agreement and that the court lacked subject matter jurisdiction over any claim that plaintiff's union breached its duty of fair representation because it is "settled Illinois law that the Illinois Labor Relations Board and not the circuit courts hear such claims" (citing *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 165-66 (1998)). The CTA also contended that plaintiff failed to allege a violation of the collective bargaining agreement where the CTA and the Union had agreed to final and binding arbitration, and there was no allegation that the CTA has not complied with the arbitration award.

¶ 9    Plaintiff filed a response to the CTA's motion to dismiss the amended complaint on February 5, 2015. Plaintiff continued to acknowledge that "[u]nder some circumstances an individual, unionized employee may lack standing to challenge an arbitration award, which was made pursuant to a [collective bargaining agreement]" but argued that he had standing "to independently challenge [the CTA's] breach of the [collective bargaining agreement]" based on his allegation that the Union did not provide him fair representation.

¶ 10    Following briefing, the circuit court held a hearing on the CTA's motion to dismiss on April 3, 2015. The court heard argument from the parties and denied the CTA's motion. The court found that "the amended complaint contained sufficient factual allegations to plead that the union breached its duty of fair representation." On May 1, 2015, the CTA filed a motion for reconsideration, which was denied on August 20, 2015.

¶ 11    Thereafter, on September 21, 2015, the CTA filed a "Third-Party Complaint for Implied Indemnification" against the Union, arguing that "[i]f, as the Complaint alleges, [the Union] breached its duty of fair representation to Plaintiff ***, then some or all of Plaintiff's purported damages were caused by [the Union]'s breach of its duty of fair representation." The CTA argued that, if damages were awarded, the Union would be "liable to CTA for any damages that flow from its breach of its duty of fair representation to Plaintiff." The CTA contended that, "pursuant to 735 ILCS 5/2-406, a complete determination of the controversy between [p]laintiff *** and CTA cannot be had without the presence of [the Union] in the instant lawsuit."

¶ 12    On November 13, 2015, the Union filed a motion to dismiss plaintiff's amended complaint and the third-party complaint filed by the CTA. The Union alleged that plaintiff's complaint was defective and that the circuit court lacked subject matter jurisdiction to consider it because the Illinois Labor Relations Board (Illinois Labor Relations Board or Board) has exclusive jurisdiction over claims that a Union breached its duty of fair representation. Alternatively, the Union claimed that plaintiff had not alleged sufficient facts to support a breach of the duty of fair representation, where he had made no allegations of intentional misconduct or retaliation by the Union. The Union also contended that third-party complaint should be dismissed because, "[i]f there is liability (which the Union disputes), the CTA and the Union are respectively liable for separate items of damage." Finally, the Union argued that it had no obligation to contribute to the damages plaintiff was awarded from the CTA because it

theoretically could be liable for back pay only after the date that the employee would have been reinstated and plaintiff was actually reinstated. Thus, it contended, there were no possible damages that could be attributable to the Union.

¶ 13    The CTA responded to the Union's motion to dismiss on December 22, 2015. The CTA "agree[d] with the Union that Plaintiff's Knox's Amended Complaint should be dismissed," but contended that the motion to dismiss should be denied as to the third-party complaint, because it was premature and the Union was a necessary party to a determination of the controversy between plaintiff and the CTA.

¶ 14    Plaintiff also responded to the motion to dismiss on December 23, 2015, contending that the Union's arguments regarding his amended complaint had "already been adjudicated by the Court and therefore must be denied."

¶ 15    On February 26, 2016, the circuit court held a hearing on the Union's motion to dismiss. After allowing the parties to present arguments, the court indicated that it wanted to "go back to the subject matter jurisdiction" issue. Counsel for the Union maintained that the case law instructed that breach of the duty of fair representation cases were required to "go to the Labor Board," but acknowledged that it appeared the court had "already decided the issue" to the contrary. Counsel for the CTA agreed that the Illinois Labor Relations Board had exclusive jurisdiction, adding that it was "subject matter jurisdiction over the question, not the party," and thus, plaintiff's complaint against the CTA could not survive if the court found that it lacked subject matter jurisdiction over the question of the Union's breach of duty. The court stated that, after reviewing additional case law, it had reconsidered its prior order and found that it did not have subject matter jurisdiction over the matter. The court "*sua sponte* reconsider[ed] [its] prior decision," "dismissed plaintiff's complaint," and "dismissed [the third-party complaint] as moot." Plaintiff's motion to reconsider the dismissal of the amended complaint was denied on July 19, 2016. Plaintiff filed a timely notice of appeal on August 16, 2016.

¶ 16    In this court, plaintiff challenges the circuit court's order, which dismissed the amended complaint for lack of jurisdiction and dismissed the third-party complaint as moot. Plaintiff argues that the trial court "improperly determined that it lacked subject matter jurisdiction to determine whether the Union breached its Duty of Fair Representation." We review the court's decision to dismiss an action for lack of subject matter jurisdiction *de novo*. *Country Mutual Insurance Co. v. D&M Tile, Inc.*, 394 Ill. App. 3d 729, 735 (2009); *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26 ("Whether the circuit court had subject matter jurisdiction to entertain a claim *** is a question of law and will be reviewed *de novo*.").

¶ 17    Both the CTA and the Union have filed response briefs before this court. Both parties agree that the trial court's decision to dismiss the amended complaint was proper because the trial court lacked subject matter jurisdiction to consider plaintiff's claim. The Union also makes additional arguments specific to the dismissal of the CTA's third-party complaint against the Union. Specifically, it contends that "appellate jurisdiction does not exist" because plaintiff lacks standing to appeal the dismissal of the CTA's third-party complaint. The Union also claims that it has no responsibility to share in the CTA's possible liability to plaintiff and that plaintiff's complaint is an untimely attack on an arbitration award pursuant to the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2016)). Plaintiff has not filed a reply brief.

¶ 18    Because the Union has raised an issue implicating this court's jurisdiction, we will consider that argument first. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984) (a reviewing court has a "duty to consider its jurisdiction and to dismiss the appeal if it determines that jurisdiction is wanting"). Specifically, the Union contends that this court lacks jurisdiction because plaintiff lacks standing to appeal the dismissal of the CTA's third-party complaint where only the CTA could appeal such dismissal and the CTA did not do so.

¶ 19    Initially, we note that our supreme court has clarified that issues of standing do not implicate our subject matter jurisdiction. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). Under Illinois law, lack of standing is an affirmative defense that is the defendant's burden to plead and prove, and it may be forfeited if not raised in a timely manner in the trial court. *Id.* at 252-53.

¶ 20    Nonetheless, we agree that plaintiff lacks standing to pursue an appeal against the Union. Standing in Illinois requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The purpose of the doctrine of standing is to ensure that issues are raised only by those parties with a real interest in the outcome of the controversy (*Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004)) and that courts resolve actual controversies between parties rather than abstract questions or moot issues (*Owner-Operator Independent Drivers Ass'n v. Bower*, 325 Ill. App. 3d 1045, 1050 (2001)).

¶ 21    Although plaintiff listed the Union as a party in his notice of appeal, plaintiff's complaint in the trial court was only against the CTA, and he never amended that complaint to assert any claim against the Union. Instead, the Union was only brought into this action by the CTA's third-party complaint, and once that third-party complaint was dismissed as moot, the CTA did not appeal that dismissal. Moreover, there is no question that the Union has not forfeited the issue of standing, as they have consistently raised the issue from the outset of their involvement and through this appeal.

¶ 22    In these circumstances, we conclude that plaintiff lacked standing to appeal the dismissal of the third-party complaint. See *Clay v. Pepper Construction Co.*, 205 Ill. App. 3d 1018, 1022 (1990) ("The right to appeal exists only in favor of a party whose rights have been prejudiced by the judgment or decree appealed from."). Where plaintiff had raised no claim against the Union in the trial court and where he was not a party to the third-party complaint between the CTA and the Union, he had no rights that were prejudiced by the dismissal of the third-party complaint. See *Stickler v. American Augers, Inc.*, 303 Ill. App. 3d 689, 692 (1999) (a nonsettling defendant did not have standing to appeal circuit court's order as to its settling codefendants, where the nonsettling defendant had not timely filed a contribution claim against the settling codefendants); *Clay*, 205 Ill. App. 3d at 1023 (codefendants who had not asserted a counterclaim for contribution against a defendant lacked standing to appeal the granting of summary judgment which dismissed the defendant from the case); *Tisoncik v. Szczepankiewicz*, 113 Ill. App. 3d 240, 247 (1983) (defendant who had not asserted a counterclaim for contribution against its codefendants lacked standing to appeal the dismissal of the codefendants from the case). Accordingly, we find that plaintiff lacked standing to appeal the dismissal of the third-party complaint, and we dismiss the Union from this appeal.

¶ 23    Having so found, we turn to plaintiff's challenge to the circuit court's order that dismissed plaintiff's amended complaint against the CTA. Specifically, plaintiff contends that the circuit court erroneously determined that it lacked subject matter jurisdiction to determine whether

the Union breached its duty of fair representation and that such a question may be properly considered by the circuit court.

¶ 24 The only parties to a collective bargaining agreement are the union and the employer. *Stahulak*, 184 Ill. 2d at 184. Accordingly, individual employees ordinarily lack standing to seek judicial review of arbitration awards. *Id.* at 180-81. There is, however, an exception to this rule, which plaintiff argues is applicable in this case. An individual employee has standing to challenge the arbitration award in court where the employee can show that the union breached its duty of fair representation—*i.e.*, "that the union's conduct in processing the grievance was arbitrary, discriminatory, or in bad faith." *Id.* at 181, 184. The duty of fair representation stems from a union's statutory role as exclusive bargaining agent. *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d 612, 619 (1995).

¶ 25 This court, however, has held that Illinois Labor Relations Board has exclusive jurisdiction to determine whether the union breached its duty of fair representation. In *Foley v. American Federation of State, County & Municipal Employees*, 199 Ill. App. 3d 6 (1990), the plaintiffs were parole officers employed by the Illinois Department of Corrections and members of the defendant union. They filed a grievance with the union over actions of the employer, and the union processed the grievance through the third step of the grievance procedure established by the collective bargaining agreement. *Id.* at 8. After the union refused to arbitrate the grievance on the basis that the claim could not prevail, the plaintiffs filed a complaint in the circuit court, alleging that the union had breached its duty of fair representation and the employer had breached the collective bargaining agreement. The circuit court dismissed the complaint, finding, as to the union, that exclusive jurisdiction lay with the Board. *Id.* The appellate court affirmed, explaining that, under the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, ¶ 1606(d)), unions have the duty to fairly represent the interests of all of their members, and, a breach of this duty constitutes an unfair labor practice under the Act. *Foley*, 199 Ill. App. 3d at 9-12. As such, claims involving breach of the duty of fair representation are "subject to the Act's comprehensive scheme of remedies and administrative procedures," and the Act gives the Board exclusive jurisdiction to resolve such claims. *Id.* at 10. Regarding the plaintiffs' claim against their employer, the Illinois Department of Corrections, the court found that the claim was against the State of Illinois for purposes of the immunity statute, and was required to be brought in the court of claims. *Id.* at 12.

¶ 26 The court in *Foley* also explained that there are important policy considerations underlying this rule. The Act provides a comprehensive set of remedies and procedures for resolving labor disputes involving public employees, the unions that represent them, and the agencies that employ them. *Id.* at 10. One reason the Act confers on the Board exclusive jurisdiction to resolve charges involving unfair labor practices—including breach of a union's duty of fair representation—is that allowing trial courts to decide such questions would inevitably lead to "[i]nconsistent judgments and forum shopping" which would undermine the goal of uniformity sought to be achieved by the Act. *Id.* at 11. The court also noted that the already overburdened court system would face increased amounts of unnecessary litigation should there be concurrent jurisdiction over breach of duty of fair representation claims. *Id.*

¶ 27 In arguing that jurisdiction exists in the circuit court, plaintiff relies on *Vaca*, 386 U.S. 171, in which the United States Supreme Court found a cause of action in federal court for breach of the duty of fair representation claims, even though the same claim can also be brought before the National Labor Relations Board (NLRB). However, Illinois courts have distinguished and

rejected the analysis in *Vaca*, when applied in the context of the Act. This court has noted that the Supreme Court's decision was based in part on the concern that, under federal law, the general counsel of the NLRB had unreviewable discretion to refuse to institute an unfair labor practice complaint and the federal statute provided for no review of this decision. See *Foley*, 199 Ill. App. 3d at 11 (citing *Vaca*, 386 U.S. at 182-83). By contrast, the Act sets forth explicit standards by which the Board must determine whether to issue an unfair labor practice complaint, and a decision by the Board's executive director not to issue a complaint is appealable to the Board and ultimately to the appellate court on administrative review. See *id.* at 11-12.

¶ 28 Plaintiff argues that *Foley* is distinguishable from this case, and that the trial court erred in relying on it. Plaintiff contends that the court in *Foley* "exclusively relied upon" *Board of Education of Community School District No. 1 v. Compton*, 123 Ill. 2d 216, 219 (1988), in deciding to reject *Vaca*, when, according to plaintiff, the *Compton* decision was "never intended to apply to non-educational labor unions." See *Foley*, 199 Ill. App. 3d at 10-11. Plaintiff's argument essentially asks this court to determine that *Foley* was wrongly decided because it applied *Compton* in a non-educational union context. We find no support for plaintiff's contention, and decline to do so.

¶ 29 Plaintiff also argues that *Foley* is distinguishable because the *Foley* court's holding regarding the Board's exclusive jurisdiction over claims involving the duty of fair representation was made in relation to the *Foley* plaintiffs' claims against their union, where plaintiff's action is against his employer. The Fourth District appellate court addressed this issue in *Cessna*, 296 Ill. App. 3d at 161-68, specifically finding that the circuit court lacks jurisdiction to consider whether a union breached its duty of fair representation, and thus, the circuit court cannot consider such claims against the union, or claims against an employer for breach of contract claims that are premised on the union's breach. The court in *Cessna* concluded that:

> "Were we to agree with plaintiff that the circuit court has jurisdiction over her breach of contract claim against the City, employees could thwart the purpose of the Act to vest jurisdiction in the Board over matters involving collective-bargaining agreements. Plaintiff alleges in count I that the City wrongfully discharged her and arbitrarily applied to her certain rules and regulations promulgated pursuant to the Agreement. These allegations cannot be addressed by the circuit court without interpreting the Agreement and viewing the City's alleged actions in light of this interpretation. These are matters that fall within the expertise of the Board.
>
> * * *
>
> Allowing plaintiff to pursue her contract claim against the City in circuit court would undermine the Act's stated purpose and frustrate the legislature's intent to provide a uniform body of law in the field of labor-management relations to be administered by those who have the required expertise in this area. Concurrent jurisdiction may lead to forum shopping and inconsistent judgments in similar factual settings. Another consideration is the fact that circuit courts lack jurisdiction to hear claims against unions for breach of the fair duty of representation. Pleading and proving such claims is a prerequisite to maintaining an action against an employer for breach of the collective-bargaining agreement. Should we adopt plaintiff's position, circuit courts would be faced with the awkward situation of putting an action against an

employer for breach of contract on hold while the Board decides whether the union breached its duty to the employee of fair representation. Undue delay in the circuit courts would certainly result.

Thus, we hold that the circuit court lacked subject-matter jurisdiction over plaintiff's claim of breach of contract in count I of her complaint and exclusive jurisdiction lies with the Board." *Id.* at 165-68.

¶ 30 We also reject plaintiff's reliance on *Cosentino v. Price*, 136 Ill. App. 3d 490 (1985), and *Parks v. City of Evanston*, 139 Ill. App. 3d 649 (1985), both of which were decided before *Foley* and *Cessna*. Importantly, those cases did not consider the Act, because both cases concerned alleged union breaches of the duty of fair representation that occurred prior to its effective date.[1] See *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165 (1989) ("Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as to preclude or limit the jurisdiction of the circuit courts.").

¶ 31 We find plaintiff's reliance on *Stahulak*, 184 Ill. 2d 176, to be misplaced as well. In *Stahulak*, the plaintiff brought an action against the City of Chicago, the fire department, and the union, asking the court to vacate the arbitration award after his employment termination. *Id.* at 178. The circuit court vacated the arbitration award, and the supreme court reversed. The court held that proceedings to vacate an arbitration award entered pursuant to a collective bargaining agreement must be brought by a party to the agreement, in that case the city and the union, but not the plaintiff. Although the court held that "[i]ndividual employees represented by a union lack standing to seek judicial review of a grievance procedure unless they prove that their union breached its duty of fair representation," it did not consider or determine where jurisdiction lies to make that determination. *Id.* at 183-84. The court did not address or overrule *Foley* or *Cessna*, which, as stated above, concluded that exclusive jurisdiction to consider that question lies with the Board. We agree with *Stahulak* that an individual employee represented by a union cannot seek judicial review of a grievance procedure unless he proves that their union breached its duty of fair representation. However, pursuant to *Foley* and *Cessna*, that determination must be made by the Board before an employee may bring an action in the circuit court.

¶ 32 Nonetheless, even if we were to conclude that, under *Stahulak*, a claim of the breach of the duty of fair representation need not be brought before the Board, we would still conclude that plaintiff's claims fail to implicate the exception to the general rule that an individual employee lacks standing to seek judicial review of arbitration awards. As stated above, in order to show that a union breached its duty of fair representation, an employee must show "that the union's conduct in processing the grievance was arbitrary, discriminatory, or in bad faith." *Id.* at 181. A union violates its duty of fair representation only where it commits intentional misconduct in representing an employee. See *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 48 (citing 5 ILCS 315/10(b)(1) (West 2008), and *Metropolitan Alliance of Police v. Illinois Labor Relations Board*, 345 Ill. App. 3d 579, 587-88 (2003)). To establish intentional

---

[1]We also reject plaintiff's reliance on *Degenhardt v. City of Chicago*, 2014 IL App (1st) 121139-U, which is an unpublished case and cannot be cited for authority before this court. Ill. S. Ct. R. 23 (eff. July 1, 2011).

misconduct, the employee must prove by a preponderance of the evidence (1) the union's conduct was intentional and directed at the charging party *and* (2) the intentional action occurred because of and in retaliation for some past activity by the employee or because of animosity between the employee and the union's representatives. *Id.*

¶ 33 In this case, plaintiff merely states that the Union breached its duty of fair representation, but he provides no specific factual allegations that would support such a conclusion. Although plaintiff conclusively claims that the Union "did not bring up the issue of back pay and benefits" during the arbitration hearing, it is apparent from the arbitration award itself that the issue of back pay and benefits was before the arbitrator, who found that "[c]onsidering [plaintiff's] offense, he is not entitled to *back pay or benefits*." (Emphasis in original.) The fact that the arbitrator decided the issue against plaintiff does not establish that the Union breached its duty of fair representation. Plaintiff has not pleaded any allegations that would support a conclusion that the Union committed intentional conduct directed at him that was retaliatory or due to animosity between him and the union representatives. *Id.*

¶ 34 We thus conclude that the exception to the general rule that employees lack standing to seek judicial review of arbitration awards does not apply, and the trial court lacked jurisdiction to consider plaintiff's claim that the Union breached its duty of fair representation. See *Cessna*, 296 Ill. App. 3d at 161-68.

¶ 35 For the foregoing reasons, we conclude that the trial court lacked jurisdiction to hear plaintiff's case. Accordingly, we affirm the circuit court's order dismissing the complaint for lack of subject matter jurisdiction.

¶ 36 Affirmed.